

FILED - GR

August 2, 2010 3:49 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BY __aid__:_____ SCANNED BY AO 82

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MEDTEC AMBULANCE CORP., as
Successor to C.T.R., INC.,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

Civil Action No **1:10-cv-759**
**Gordon J Quist**
Hon. **U.S. District Judge**

_____/

BRETT A. RENDEIRO (P64792)
AARON PHELPS (P64790)
VARNUM LLP
Attorneys for Plaintiff
39500 High Pointe Boulevard, Suite 350
Novi, MI 48375
(248) 567-7400
barendeiro@varnumlaw.com
amphelps@varnumlaw.com

_____/

## COMPLAINT

      Plaintiff, Medtec Ambulance Corp., as Successor to C.T.R., Inc., by its attorneys,

Varnum LLP, brings the following Complaint against the Defendant, United States of America,

to recover a tax erroneously assessed and paid.

      For its Complaint against Defendant, Plaintiff Medtec Ambulance Corp., ("Medtec") as

Successor to C.T.R., Inc. ("CTR") states as follows:

### JURISDICTION

      1.    Medtec is an Indiana corporation with its principal place of business at 2429

Lincolnway East, Goshen, Indiana 46526.

2.     CTR was a Michigan corporation with its principal place of business in the State of Michigan at 71049 US 131, White Pigeon, MI 49099.

3.     On October 30, 2000, CTR merged with and into Medtec, with Medtec as the surviving corporation.

4.     Medtec maintains manufacturing facilities in Goshen, Indiana and White Pigeon, Michigan.

5.     The Defendant is the United States of America.

6.     Jurisdiction is conferred upon this Court by 28 USC § 1346(a)(1) for excise taxes erroneously assessed and paid by CTR to the Internal Revenue Service and for recovery of those excise taxes erroneously paid.

## BACKGROUND OF CASE

7.     During the tax years at issue, CTR was a final stage manufacturer (or converter) of light and medium duty incomplete chassis cabs into "Cabriolet Sportliner" and "Cabriolet Patriot" (collectively, "Cabriolet") and other brand recreational tow vehicles.

8.     During the years at issue, CTR performed its manufacturing or conversion work on incomplete chassis cabs provided by dealers including Freightliner of Grand Rapids, Inc. ("Freightliner"), a heavy vehicle dealer.

9.     CTR performed its final stage manufacturing and conversion work at its White Pigeon, Michigan location.

10.    In 1994, the Internal Revenue Service granted CTR a 637 "Q" letter of registration. The "Q" registration gives CTR the ability to buy and sell heavy duty vehicles on a tax-free basis.

2819127_1.DOC

11.     During the tax years at issue, CTR purchased incomplete chassis cabs from Freightliner and converted them into "Cabriolet" brand recreational tow vehicles.

12.     These vehicles were either returned to Freightliner for resale or purchased from Freightliner by CTR, converted and then resold to dealers and customers.

13.     These vehicles were constructed in response to the recreational vehicle industries' call for a larger truck capable of safely towing large recreational vehicles as well as serving as a truck for purposes of carrying passengers and cargo identical to that of a traditional pick-up truck.

14.     These vehicles have a Gross Vehicle Weight ("GVW") of less than 33,000 pounds as required under IRS § 4051(a)(2) to be exempt from a 12% federal excise tax.

15.     The chassis of these vehicles are 286 inches in length, including frame overhang.

16.     Overall width of the chassis is 90 inches. (Attached as **Exhibit 1** are photographs of a typical Freightliner chassis in original form as received by CTR before conversion.)

17.     Approximately 18 inches is cut off at the end of each frame by CTR.

18.     A flatbed body made of solid aluminum diamond and smooth plate constructed vehicle bed is then mounted on the chassis.

19.     During this process, the wheel base and GVW rating of a chassis remain unchanged.

20.     No axles were added as the chassis remains a single axle chassis.

21.     The flatbed body mounted on the chassis is 99 inches in length.

22.     After mounting the chassis, the overall length of the truck vehicle is 270 inches.

23.     The side skirts or walls of the body are 34 inches high, and tapered 26 inches high at the rear of the truck.

24. The cab of the chassis also undergoes substantial modification to enhance the sale of these trucks to people in the recreational vehicle market. Soundproofing, power steering, automatic transmission, carpeting, door panels, headliner, wood accent packages and captain seats are common.

25. Most units are equipped with upgraded radios or stereos; they also may be equipped with radar detectors, refrigerators and a television/VCR. (Attached as **Exhibit 2** is the Cabriolet vehicle walk around guide which details the numerous design attributes found on the truck.)

26. The design package of the vehicle was intended by CTR to make it a larger version of a pick-up truck.

27. Four to eight storage boxes are built on the sides, utilizing space under the body. These boxes total up to 34 cubic feet.

28. The Cabriolet has a vastly larger cargo carrying capacity compared to a typical pick-up truck.

29. The storage boxes are used to carry any type of cargo including, but not limited to, repair equipment, generators, engines, skis, motorized cars and wheelchairs for disabled individuals, propane tanks, animal feed and other common recreational gear.

30. In addition, like other pick-up trucks, a large center toolbox, 90 inches in width, 12 inches deep, and 12 inches wide, can be installed on the bed of the truck to store additional cargo.

31. In addition to the trailer and coupler modification, the beds of these trucks can be modified to carry motorcycles, ATVs, and other recreational vehicles on the flatbed besides a large fifth wheel.

-4-

32. The vehicles are equipped to haul up to six passengers and/or cargo as well as tow recreational trailers and other trailers for horses, cattle, equipment or similar type trailers.

33. At home base, the truck is used like any other pick-up truck for any purpose.

34. Three types of trailer hook-ups are generally available on a Cabriolet Sportliner vehicle.

35. A built-in or recessed hitch is installed, which allows the Cabriolet Sportliner to pull almost any type of recreational trailer.

36. The second measure of trailer hook-up is a receiver hitch mounted under the rear bumper.

37. The third method involves installation of folding bars in the bed on which an oscillating light weight recreational fifth-wheel trailer coupler can be mounted. The trailer coupler is easily removable, so as to make the body readily available for use as a traditional pick-up truck. (*See* **Exhibit 3**.)

38. Because of the unique design of the Cabriolet Sportliner truck, it is incapable of being certified as a tractor capable of pulling a standard commercial semi-trailer.

39. Department of Transportation and State Regulation preclude such vehicles being sold or certified as semi-tractors for use by the commercial industry.

40. The design alone precludes the Cabriolet from being converted for commercial use. (Attached as **Exhibit 4** is a comparison between the small Cabriolet and a typical commercial semi-tractor.) The commercial semi-tractor is almost twice the size of the Cabriolet vehicles.

41. 'The standard Cabriolet vehicle has a hydraulic brake system with a master cylinder and hydraulic disc brakes on all four wheels of the vehicle.

2819127_1.DOC

42. The brakes have a standard caliper that squeezes the disc and requires hydraulic pressure to stop. This is simply accomplished by pressing the brake foot pedal.

43. There is no trailer air brake system on this truck, which is required for commercial tractors.

44. Upon completion of the modifications to the Cabriolet truck, a brake monitor using an electric plug is installed.

    a. There is an inertia sensor inside which moves when the vehicle is stopping.

    b. This signal is interpreted to determine the amount of stopping power applied to the trailer's brakes.

    c. The trailer brake system is not connected to the truck brake system.

45. The type of brake system found on the Cabriolet truck is used in all standard RVs, pick-up trucks, vans or light duty trucks that pull RV type trailers.

46. When a Cabriolet vehicle is sold to the customer, the GVW rating remains as certified in its Certificate of Origin ("CO"). (Sample C.O.s are submitted as **Exhibit 5**.)

47. Under Department of Transportation and National Highway Transportation Safety Administration Regulations, a CO must be issued by a primary manufacturer of these trucks.

48. The CO states the model, year, type of vehicle manufactured, Vehicle Identification Number ("VIN") and GVW rating of the vehicle.

49. Any departure or variation from such certification constitutes a violation subject to penalty under federal statutes and applicable regulations.

50. The transmission in the Cabriolet is an automatic transmission while the typical commercial semi-tractor has a manual transmission.

51. The steering capacity is also distinctly different. The Cabriolet is designed to make it perform like any other pick-up truck.

2819127_1.DOC

## The Audit

52. In 1996, the Michigan District, Examination Division (Excise) audited CTR for the following periods: 9403, 9409, 9412, 9503, 9506, 9509, 9512, 9603, 9606, 9609, 9612. The audit was conducted by Revenue Agent Timothy Boes.

53. Agent Boes proposed an assessment on the Cabriolet trucks based on IRC § 4051 and the temporary regulation thereunder.

54. CTR appealed the decision of the Examination Division to the Michigan District Appeals Office and the case was assigned to Appeals Officer David E. Stauffer.

55. In 1998, Mr. Stauffer determined that the case should be returned to the Examination Division because his review of the matter led him to believe technical advice from the National Office of the Internal Revenue Service was necessary.

56. Of serious concern to Mr. Stauffer was the fact that two other Internal Revenue Service Appeals Offices, in Indianapolis and Oklahoma, had considered the federal excise tax issue under IRC § 4051 and the temporary regulations thereunder, in an identical situation where the trucks were manufactured and designed like the Cabriolet trucks, and both cases were fully conceded in favor of the taxpayers.

57. Agent Boes submitted his position to the National Office of the Internal Revenue Service.

58. CTR, through its attorney and accountants, submitted its position and documentation to the National Office of the Internal Revenue Service.

59. On March 2, 2000, the Internal Revenue Service issued Tax Advice Memorandum 115047-99, attached as **Exhibit 6**.

2819127_1.DOC

60. The legally non-binding Tax Advice Memorandum states that CTR is liable for the excise tax imposed by Section 4051 based on an erroneous conclusion that the truck at issue sold by CTR is in fact a tractor for purposes of assessing an excise tax under IRC § 4051.

61. On June 25, 2006, the Internal revenue Service assessed CTR excise taxes on the sale of several Cabriolet trucks for tax periods ending 9403, 9409, 9412, 9503, 9506, 9509, 9512, 9603, 9606, 9609, 9612, attached as **Exhibit 7**.

62. On February 9, 2009, CTR filed Form 8849, Claim for Refund of Excise Taxes (attached as **Exhibit 8,** without attachments). The Claim for Refund filed by CTR was timely pursuant to IRC § 6511(a).

63. CTR has not received a response from the Internal Revenue Service to its claim for refund as of the date of filing this Complaint.

64. This lawsuit is timely filed pursuant to IRC § 7422 and IRC § 6532(a)(1).

## COUNT I

## CLAIM FOR ABATEMENT AND REFUND

65. CTR repeats and realleges paragraphs 1 through 59 of this Complaint as if set forth in full.

66. Despite being issued assessments for tax periods 9403, 9409, 9412, 9503, 9506, 9509, 9512, 9603, 9606, 9609, 9612, CTR filed a Claim for Refund and paid the tax on the sale of one vehicle for the 9412 tax period.

67. The tax the Internal Revenue Service assessed for the above periods, plus interest, exceeds Two Hundred Fifty Thousand ($250,000.00) Dollars.

68. The amount of the tax paid, plus interest as is required to file this tax refund action, was $8,700.00 for the sale of one Cabriolet vehicle (Stock No.: 679946) sold by CTR.

69.     The sale of such vehicles are exempt from excise tax under IRC § 4051(a)(2).

70.     When IRC § 4051 was enacted, Congress did not foresee the sale or need for trucks like the Cabriolet. The excise tax imposed pursuant to IRC § 4051 was intended and directed at commercial vehicles.

**WHEREFORE,** CTR respectfully requests:

A.      Abatement of the erroneous excise tax assessments for tax periods ended 9403, 9409, 9412, 9503, 9506, 9509, 9512, 9603, 9606, 9609, 9612; and

B.      Judgment in the amount of $8,700.00, together with interest and costs as allowed by law and such other relief as the Court may deem just, including the award of attorney fees under 26 USC § 7430.

Respectfully submitted,

By:
BRETT A. RENDEIRO (P64792)
AARON PHELPS (P64790)
VARNUM LLP
Attorneys for Plaintiff
39500 High Pointe Boulevard, Suite 350
Novi, MI 48375
(248) 567-7400
barendeiro@varnumlaw.com
amphelps@varnumlaw.com

Dated: August 2, 2010

2819127_1.DOC

**JURY DEMAND**

Plaintiff demands a trial by jury trial in the above-captioned cause of action.

Respectfully submitted,

By: _____
BRETT A. RENDEIRO (P64792)
AARON PHELPS (P64790)
VARNUM LLP
Attorneys for Plaintiff
39500 High Pointe Boulevard, Suite 350
Novi, MI 48375
(248) 567-7400
barendeiro@varnumlaw.com
amphelps@varnumlaw.com

Dated: August 2, 2010